UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60096-CR-ZLOCH/Snow

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EDWIN DISLA, et al.,

    Defendants.
_____

### O R D E R

THIS CAUSE is before the Court on the defendant Ricardo Mejia-Martinez' Motion for Severance (DE 81), which was referred to United States Magistrate Judge Lurana S. Snow. Oral argument was held on this motion on December 4, 2007. Defendant Mejia-Martinez seeks a severance of his trial from that of his co-defendant, Edwin Disla, on two grounds. First, the defendant wishes to introduce a statement made by Disla, through counsel at the removal hearing in Puerto Rico and later in a debriefing by the Government, about Mejia-Martinez' lack of knowledge about the drugs that were involved in the instant case. Defendant Mejia-Martinez also seeks a severance based on prejudicial spillover.

The Government, in its Response In Opposition to Defendant's Motion to Sever Trial (DE 86, pp. 1-4), summarizes the evidence it will present at trial:

> In or about August 2006, a cooperating witness, hereinafter designated as "CW-1," informed agents assigned to Immigration and Customs Enforcement, Internal Affairs Division, that he/she and another cooperating individual, hereinafter designated as "CW-2," met with an individual named "Campeon" at a

Starbucks restaurant in North Miami, Florida. Cw-1 stated that during this meeting, Campeon offered to import cocaine or heroin from Colombia into the United States utilizing private aircraft. Campeon also stated that he is from the Dominican Republic and that his family resided there and were members of the Dominican military. Campeon was later identified by ICE agents as Customs and Border Protection Officer Edwin Disla.

After a series of negotiations, on February 3, 2007, CW-1 and CW-2 met Disla at the Knife restaurant, located in Hallandale, Broward County, Florida. Disla agreed to transport a test shipment of ten kilograms of cocaine from San Juan, Puerto Rico to Miami, Florida. On February 9, 2007, agents acting in an undercover capacity met with Disla in the San Patricio parking lot located in Puerto Rico and arranged for the delivery of ten kilograms of purported cocaine. Later that day, Disla met with the informants and delivered the sham cocaine in a parking lot of Gulf Stream Racetrack, Hallandale, Florida. These events gave rise to the substantive charge of attempted distribution against co-defendants Disla and Cruz set forth in Count 2 of the indictment.

On March 20, 2007, Disla met with informants at a Starbucks coffee shop in Aventura, Florida. During this meeting, Disla agreed to transport a total of 20 kilograms of heroin and 25 kilograms of cocaine to South Florida. Disla stated that he would meet CW-1 in Puerto Rico in order to finalize the transaction.

On March 28, 2007, Disla advised CW-1 that he was on a plane in Miami that was preparing to take off en route to San Juan, Puerto Rico. Disla called CW-1 later that day and advised that he was in Puerto Rico and would meet with his associates and rent a car. Disla later called CW-1 and stated that he was with his associates and that he could meet with CW-1 at the pre-arranged location. On that same date, Disla arrived at the location in Bayamon, Puerto Rico, with an individual

2

identified as Jose Vergara-Arocho. Disla exited the vehicle, entered the undercover vehicle, and met with CW-1 and an undercover agent. Disla said that his associates were available to pick up the merchandise. Disla returned to his vehicle and the driver, Vergara-Arocho, re-positioned the vehicle several feet over from the original parking space. A second vehicle, identified as a Toyota Corolla, entered the parking lot and backed into the parking space between Disla and the undercover vehicle. The driver of the vehicle was later identified as Ricard Mejia-Martinez. Additional undercover agents arrived with the purported narcotics and parked their vehicle in front of the Toyota Corolla. Mejia-Martinez exited the Toyota Corolla, walked toward the second undercover vehicle and retrieved one duffel bag from the trunk. Mejia-Martinez placed the duffel bag in the trunk of the Toyota Corolla. Mejia-Martinez again approached the second undercover vehicle, retrieved another duffel bag from the trunk, and placed the bag in the trunk of the Toyota Corolla and closed the trunk lid. One duffel bag had been previously loaded with 20 kilograms of sham heroin.

Agents arrested Disla, Vergara-Arocho and Mejia-Martinez at that time. Agents interviewed Mejia-Martinez subsequent to his arrest. According to Mejia-Martinez, Disla had given Mejia-Martinez a cell phone in Miami, Florida, the previous day. Mejia-Martinez further stated that during the morning of March 28, 2007, Disla called him and asked if he wanted to travel to Puerto Rico. Two unidentified males picked up Mejia-Martinez and transported him to Disla's residence. Disla drove Mejia-Martinez to Miami International Airport where Disla purchased a one-way ticket for himself and Mejia-Martinez to San Juan, Puerto Rico. Upon arrival in Puerto Rico, an individual later identified as Vergara-Arocho picked up Disla and Mejia-Martinez in a white pick-up truck and drove them to a car rental agency. Disla rented the previously described Toyota Corolla and drove to a shopping mall, followed by Vergara-Arocho and Mejia-Martinez. Disla and

>Mejia-Martinez entered a Sears store where Disla purchased three suitcases. Disla drove the Toyota Corolla to meet with CW-1. Vergara-Arocho and Mejia-Martinez walked toward the Wal-Mart store, where he received a phone call from Disla. Disla instructed Mejia-Martinez to remove the duffel bags from one car (the undercover vehicle) and place them in the trunk of the Toyota. Mejia-Martinez stated that after he placed the bags in the trunk and closed the lid, he believed that the bags contained drugs.

## I. **DISCUSSION**

### A. **Prejudicial Spillover**

Defendant Mejia-Martinez argues that he will be unduly prejudiced in a joint trial with Disla because of the spillover effect of the evidence against Disla. Fed. R. Crim. P. 8(b), which governs the joinder of defendants in the same indictment provides:

>Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in one count.

The purpose of Rule 8(b) is to encourage joint trials in the interest of judicial economy, while limiting the potential prejudicial effect against a defendant at trial. United States v. Levine, 546 F.2d 658, 662 (5th Cir. 1977). A joinder of defendants should be seen as inherently prejudicial only where the requirements of Rule 8(b) are not met. United States v. Marionneaux, 514 F.2d 1244 (5th Cir. 1975).

4

Fed.R.Crim.P. 14, which authorizes the granting of separate trials to co-defendants on a showing of prejudicial joinder provides, in pertinent part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires . . ..

Where the Court deems joinder of offenses or defendants to be proper under Rule 8(b), the decision to order a severance pursuant to Rule 14 rests within the sound discretion of the trial court. United States v. Russell, 703 F.2d 1243 (11th Cir. 1983); United States v. Morrow, 537 F.2d 120 (5th Cir. 1976). Even in complex conspiracy cases, the general rule is that persons who are jointly indicted should be tried together. Morrow, 537 F.2d at 136; United States v. Barnes, 681 F.2d 717 (11th Cir. 1982). Severance may be granted only where the defendants can demonstrate a specific, clear and compelling prejudice which could not be alleviated by the trial court and which will result in the defendant's inability to obtain a fair trial. United States v. Varella, 692 F.2d 1352 (11th Cir. 1982); United States v. Kopituk, 690 F.2d 1289 (11th Cir. 1982); United States v. Kabbaby, 672 F.2d 857 (11th Cir. 1982).

The law is clear that a defendant is not entitled to a severance merely because the evidence against his co-defendant is much more damaging than that against him or because his likelihood of acquittal is less in a joint trial than in a separate trial or

because any evidence of bad conduct, crimes, or complicity on the part of his co-defendant might influence the jury unfavorably as to him. United States v. Capo, 693 F.2d 1330 (11th Cir. 1982); United States v. Butera, 677 F.2d 1376 (11th Cir. 1982).

In the instant case, any potential prejudice against defendant Mejia-Martinez is merely speculative. Moreover, there is no reason why any prejudice against the defendant cannot be cured by an appropriate jury instruction. United States v. Condon, 132 F.3d 653, 658 (11th Cir. 1998).

B. **Statement of Co-Defendant Disla**

The defendant also contends that a severance is warranted because he wishes to introduce into evidence the out-of-court statements of defendant Disla.[1] At the removal hearing before a United States Magistrate Judge in Puerto Rico, counsel for defendant Mejia-Martinez advised the judge that Disla had told counsel that he wanted to testify that Mejia-Martinez had no knowledge of the contents of the duffel bags. Additionally, during a debriefing of Disla by federal agents in Florida, Disla stated that he realized he could use Mejia-Martinez to travel to Puerto Rico to assist him, and that Mejia-Martinez did not know what was going on.

Defendant Mejia-Martinez contends that Disla's statements are admissible under Federal Rule of Evidence 803(b), which permits introduction of a hearsay statement if (1) the declarant is

---

[1] Disla has not agreed to testify on behalf of Martinez-Mejia in the event that the court grants a severance.

6

unavailable to testify at trial, (2) the statement was against the declarant's penal interest and (3) corroborating circumstances bolster the statement's trustworthiness. In the instant case, the Government concedes that Disla is unavailable to testify in a joint trial. However, the Government argues that the statements, which tend to exculpate Mejia-Martinez, were not made against Disla's penal interest. Additionally, the Government asserts that the statements are inconsistent with the facts, which demonstrate that Mejia-Martinez must have known that he was involved in a drug deal.

The undersigned notes that while Disla knows, and therefore could testify about what he <u>told</u> Mejia-Martinez, he could not know or testify about what Mejia-Martinez thought or knew about the events in which he participated. In any event, the articulated basis for Mejia-Martinez' Motion for Severance is the potential prejudice against co-defendant <u>Disla</u>. Clearly defendant Mejia-Martinez lacks standing to assert this argument, which also is premature. If, as counsel for co-defendant Disla has stated, Disla will rely on the defense of entrapment, there is a likelihood that Disla will testify at trial. In that event, counsel for Mejia-Martinez can elicit information directly from Disla and there will be no need to utilize hearsay. For these reasons and being duly advised, it is

7

ORDERED and ADJUDGED that defendant Ricardo Mejia-Martinez' Motion for Severance (DE 81) is DENIED.

DONE AND ORDERED at Fort Lauderdale, Florida, this 17th day of December, 2007.

*(signature)*
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

AUSA Chris Clark (MIA)
Michael Pizzi, Esq.
AFPD Chantel Doakes (FTL)